Good morning, Counsel. Good morning, Your Honors. My name is Jim Durfler, and I am appearing on behalf of Appellant Admiral Insurance Company, and I'm with the law firm of Walsh Burkina Furclough. I would like to reserve five minutes of my time for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. I see. Very good. Thank you. On appeal, Admiral's requesting that this court reverse the district court's dismissal of Admiral's complaint with instructions to enter judgment in favor of Admiral. Since this is an appeal from summary judgment, the standard of review is de novo. The principal issue before this court is whether Admiral's equitable and breach of the implied covenant claims are barred by a release provision contained in a settlement agreement entered into between Appellate and ACE. Can I ask you a question? Sure. Is Admiral liable for property damage caused by professional negligence? Yes. Theoretically, yes, Your Honor. The Admiral policy provides coverage for professional negligence. So I guess that the definition in Admiral's policy for proper damage includes loss of use, right? It could, Your Honor, but you have to understand that the Admiral policy excludes claims covered by the ACE American policy. The policies purport to be mutually exclusive, but in this particular case, one can easily imagine claims that sort of overlap or that are, depending on how they're presented, appear to maybe be covered by one policy and maybe be covered by another. Well, it could because the ACE policy contains a few exceptions, so there could be overlap. So what do we do about that? I mean, what we have is one insurance company coming forward with its release, you know, that purports to say we've paid for everything covered by our policy. Right. Well, the arbitrator's order in the good faith motion proceedings revealed that there was a $211,000 component of property damage that was allocated to Admiral's 2.5 settlement offer, which is not covered by the Admiral policy. But the same arbitrator also looked at the AAIC settlement, or ACE, however you want to call that entity, and also found that it was a good faith settlement that reflected a reasonable approximation of the exposure amount, right? That's correct, Your Honor. But both orders reflected the fact that Admiral paid a component of property damage that is not covered by the policies. Anyways, Your Honor. Why? Because you are saying that $211,000 plus was not at all caused in any way by professional negligence on the Florida Gateway. Is that your position? It could have been caused, but it's not covered. That's the purpose of the ACE policy is to provide commercial general liability coverage for property damage. But you just started off by admitting that the Admiral policy covers property damage caused by professional negligence, and property damage includes loss of use damages. So why? Well, it could, but the Admiral policy contains an endorsement which excludes coverage that's available through a commercial general liability policy. So under the CGL form, there could be covered property damage, but the endorsement excludes property damage covered by a CGL policy. Was it incumbent upon your client to raise this prior to settling? The Superior Court's alternative analysis here is that your client came forward and volunteered to pay this portion of the claim. Right. That's the allegation, Your Honor. But if you look at the Blue Ridge case as well as the State Farm v. Cooperative case, an insurer in resolving a potentially covered claim is not acting as a volunteer, and the volunteer doctrine has come into judicial disfavor going back to the Continental Casualty case issued by the Supreme Court back in 1961. Right. I appreciate that, but my question really is whether it was incumbent upon the Admiral to come forward and raise this, maybe he did, prior to settling. Your Honor... Your equitable claims, let me just put it this way, your three equitable theories all rely upon the premise, which is that you paid something you didn't have to pay. Correct. Right? Right. Your Honor, at the time of the settlement, Admiral was not privy to the discrete components of the Hartford damages claims. Admiral's focus at that point was on trying to resolve the Gateway's liability, and at that time, defense counsel had gauged the liability to be between $6 and $7 million, and the offer by Hartford for $2.5 million was a reasonable offer in the face of reasonably clear liability on part of Gateway. So that's why Admiral resolved those claims. And the Blue Ridge case holds that in. Can I ask you, if you look at the Ace settlement, Hartford releases any of the claims for which Ace would be liable. Correct? That's correct. The Ace Hartford agreement released property damage. Right. And then the same arbitrator that approved your settlement approved Ace settlement and said, this is a reasonable, good faith determination of liability, exposure, and the amount of exposure. Right? That's correct. Okay. But you're saying despite all of that, you got snookered. Is that right? Well, yes. We didn't really know at the time that the $2.5 million payment included a property damage component. That was revealed by way of the arbitrator's order. So you don't think you'd have a claim that for any equitable claim, if there hadn't been a breakdown of the damages covered by the first settlement? No. That's a good point, Your Honor. If it had, if in the absence of the arbitrator's orders, Admiral would not have known that there was a property damage component that was part of, that was allocated within the settlement. Right. But your policy includes property damages. And let me ask you, so are you here for the $211,000? What are you seeking? Well, $211,000 is the minimum. There were other claims that we didn't bring into the record because of a lot of the technicalities that would be make it, would make it hard to explain to the court what... Well, what were the categories? I'm sorry? What were the categories if you don't have the numbers? So what? $211,000 for loss of use damages. What else? There were some shear wall components that constituted property damage, and I believe those were probably in the $100,000 or $200,000 range. But again, those were not part of the record, but those were the types of claims. Okay. And so is that also one that you only found out because you saw the good faith settlement order of the arbitrator? Or when did you learn about that one, the shear wall property damages? Right. At the same time, Admiral learned of those claims as well, that... And where is that? Is that in the arbitrator's order? Right. That's in the arbitrator's order, Your Honor. Is this the structural steel repairs issue or what is that? Where is that? I have the order in front of me and I'm just curious what you're talking about. I don't see anything about shear wall. So what is the total? There are ways if you... On page 14 of our opening brief, there's a component for structural steel repairs and related damages. According to the expert retained by Admiral, who was also an expert in the underlying case, had advised us that certain structural steel repairs included rust and other components that constituted property damage. So what's your best cause of action? Well, I think the best cause of action is the equitable indemnity claim because under the rule in Fireman's Fund versus Maryland Casualty and the subsequent district court case of Clarendon versus Mount Holly, an insurer's settlement with the insured or with a third party claimant on behalf of the insured does not operate as a bar to an equitable indemnity claim. But equitable indemnity typically applies where the policies cover the same losses. And as you've indicated, these policies purport to be mutually exclusive. Now when you get into the facts, one can understand per Judge it gets a little fuzzy. But can you cite to case law where California courts have applied that proposition, that doctrine, where policies didn't cover the same loss? No, I'm not aware of any cases where that rule came into play involving two separate policies. How does the theory go under equitable subrogation, under that theory? I'm sorry? Could you apply or speak to your equitable subrogation theory? Well, sure, Your Honor. As we noted in our reply brief, there are two cases, conservatorship of Edwards and the Lexington versus Century insurance case where the court looked at a subrogation claim and noted that there is an exception to the rule that an assignable cause of action is not a necessary element when an insurer is trying to recover through subrogation claims that have been purportedly released through a prior settlement, either between the insured and an insurer or between a third party claimant and insurer. And then your final equitable theory is unjust enrichment. That's correct. Do you want to speak to that? Well, again, the arbitrator's order reflects the fact that there was at least $211,000 of property damage component that was part of Admiral's $2.5 million settlement. And by virtue of the fact that Admiral paid that property damage, Ace was unjustly enriched by that payment component. All right. So, I see my time is up, Your Honor. Well, you still have three minutes left. Do you want to save that for rebuttal? Yes, I do. I have a question. I'm sorry. So, your position is that Ace should not have settled and should have waited until there was a global settlement of all parties regarding all insurance policies. Is that right? That's correct, Your Honor. I think the insurer's interest would have been better served when all parties get together with the insurers and try to... But you agree that an individual insurer has an obligation to settle once his liability becomes reasonably clear. So, are you asking Ace to violate that obligation in order to give effect to what you would like? Which is, you would agree that that's not a requirement by law, what you've just proposed, that there can never be any insurance settlement unless there's a global settlement of all policies. That's not the law, is it? No. Okay. So, you want an individual insurer to violate its obligation to settle once liability becomes reasonably clear for what you would like to be the case, but is not required by law. No, but in this particular instance, by Ace partially settling Gateway's liability, Gateway was left exposed to additional liability. No, but would you agree that they settled their entire liability? They might not have settled your client's liability on your client's separate insurance policy, but they settled their own liability, correct? Well, yes, they settled their own liability insofar as paying a release, but as it turned out, there was a component of property damage that Admiral ended up paying, which it should not have been obligated to do. But Hartford was not allowed to fully release any property damage claims for which Ace would be liable. I'm sorry, could you repeat? Anyway, it's okay. I've already asked you about that before. But anyway, go ahead, please. Oh, anyway, so my time is up. I'd like to say... All right, thank you, Counselor. We'll give you your 1 minute and 30 seconds for rebuttal. Good morning, Your Honors. Good morning. Andrew Herold for Ace American Insurance Company. We're here asking that the trial court's judgment be affirmed in its entirety. And the panel does not seem shy about asking questions, so rather than me starting where I'd like to start, I will note that... I had a question. So you say in your briefs that the only causes of action in the arbitration and before the Superior Court were negligence, professional negligence claims, right? Correct. Okay, so then why did you pay anything at all? Because under your view, right, you exclude professional negligence claims. There was a negligence claim as well, as you pointed out. There did seem to be some debate as to whether the entirety of the claims against Gateway represented professional negligence. So Ace settled not just Gateway, but all of its insured claims that could be covered under the Ace policy. So all the CGL claims went away. Right, so it really got Ace off the hook, but what about the client? What about the insured? It's unusual, right? Specifically carved out that other claims could be brought by Hartford. Yes, Hartford. Right, but you promised your client not to execute if they were to the extent they recovered and those claims implicated your policy. It seemed to be an express acknowledgement that that could happen, because I don't see these as mutually exclusive so much as sort of fuzzy in the middle, overlapping. So what about that? You're asking two points. I would say they're not actually fuzzy and overlapping. I think that there could be professional negligence that results in covered claims of the nature that Admiral paid. Separately, there could be non-professional negligence that results in claims that Ace paid. I'd like to circle back in a moment to the suggestion that Ace received a benefit from anything that Admiral did. Sure, but just stick with Judge Kerr's question, if you would, because I think this point is every benefit it was entitled to under the policy, the same benefits that insured would have received if the case had gone to trial, which is it received a full defense, an identity for all covered claims, and in fact it got a release for all covered claims. There is no benefit the insured could have received from Ace that Ace was obligated to provide that the insured did not receive. I will concede it's a little unusual to execute a settlement in this fashion, but it is consistent with California law. It's consistent with the public policy favoring settlements. Well, you know, I've gone back and forth over this. Yes, sort of. We objected, though, and we objected for a reason. And it does come back to Judge Koh's point that if the first settlement really only implicated your policy, why—forgive me, the other way around—professional negligence, then why pay anything? It seems to me that the district court's first reason for deciding that your client was off the hook and had really fulfilled its obligation is that your client said it as much in its settlement agreement. That is correct. And it's not a situation where the settlement agreement is dictating coverage or doing anything else. It's a release. So it's a release of the insured, and it's a release of a scope of claims. But at the same time, and in the same breath, it acknowledged that there may be other claims that Hartford would bring that would trigger your client's policy, except your client agreed not to execute on them if that happened—or, sorry, Hartford agreed not to execute on them if that happened. I don't know that I agree with that premise. I would consider it a belt-and-suspenders approach for absolute protection of the insured, so that in case there was any fuzziness, as Judge Koh has noted, there would be no ability for the insured to be exposed to anything that was covered under the ACE policy. Hartford was precluded from seeking to execute on it. Why didn't your client comply with its client, the insured, Gateway's request to settle all the claims at once? The insured's request in that regard was seeking more than it was entitled to under the insurance contract. The insurer's not a fiduciary. This is greatly addressed in the Griffin case that we've cited, as well as DeWitt. The insurer has no duty to pay uncovered claims, and I believe there's 50 years of California authorities saying there's no duty to settle uncovered claims. Right, but I guess hindsight is always 20-20, and I've asked opposing counsel, at what point was it incumbent upon Admiral—Admiral? Admiral T.—Admiral, to come forward and suggest, hey, there's still some claims out there that we're getting ready to pay, consistent with the obligation, overall obligation, to take care of the insured, but this isn't—we aren't volunteers. This was really—should be on your nickel. And we don't have any independent—well, I don't have in this record any indication that that was raised at that time. Is that right? That's correct. So what would be typical? You've indicated that this settlement posture is atypical to have carved out the way the Hartford claims were carved out. What would be typical? Well, typically, of course, you would like to see the insured settle entirely for all matters in the case. At one time? At one time. And then there would be an allocation at that time? There would be for a negotiated agreement of some sort, correct. However, that wasn't possible in this setting, and to Judge Koh's earlier point, I don't think it would be appropriate for Ace to have held up this settlement for multiple insureds. And, more broadly, in these complex multi-party types of suits, there are always going to be overlapping and mutually exclusive coverages in play. And the way they get settled is because one of the big parties settles, and then everybody starts to follow. But the first one in the door usually gets the best deal, correct? Correct, and that should be the incentive. And so it is possible that A.A., I.C., your client, Ace, should have paid for some of the loss-of-use property damages and didn't, and Animal got left holding the bag, right? I don't agree with that premise. I thought you did just a minute ago. I thought the premise was, yes, that's the point. It's supposed to encourage settlement. It is supposed to encourage settlement, and you could be the last man standing. I don't agree that Admiral paid anything that Ace was responsible for. But your point is settlement of claims that are covered by the policy, not settlement of all claims that are out there that may be covered by other policies. Correct, and what the insured was asking for at that point, and I believe what Admiral was hoping for, was that Ace would settle all of the claims, even those covered by Admiral. Admiral makes much of the notion that it was blindsided and it couldn't figure out its obligations and it had to proceed in this fashion. We should note Admiral had the case for five years. Admiral had defense counsel, the same defense counsel as Ace. They had access to all the same information. They were behind Ace in settlement timing, but again, they'd had the case for five years, and they could have asked their defense lawyer at any point, hey, which claims were released. They could have come to Ace and said, you know, we think Hartford's still pursuing released claims. They didn't do any of these things. Counsel, your response to opposing counsel's emphasis on the fact that the arbitration award included amounts for liquidated delay and loss of use as an indication that those claims were covered by the Admiral-Ace policy? Thank you, Your Honor, and that is the premise that underlies their equitable claims, the notion that Admiral paid claims for which Ace should have paid. The allocation in a good-faith settlement is not a coverage determination. Basically, I would say that Admiral found a phrase in a good-faith allocation order and found a similar phrase in the Ace policy and is using that as the basis for the argument that it paid claims that were covered under Ace's policy. That's not reflected. This is a good-faith allocation. It's not a coverage determination. A good-faith allocation is a rebuttable presumption or purposes of absence. But your settlement agreement with Hartford says that you are covering loss of use damages, right? In the definition of property damage and what's released, correct. So then why should Admiral pay for loss of use damages, which your settlement agreement with Hartford allegedly resolves? Not all loss of use would be covered under the Ace policy, to get to our earlier point. There are lots of types of loss of use that are not caused by an occurrence, for example, or that are caused by professional negligence that would not be covered under the Ace policy. If the building like this one was simply not completed on time, there would be a loss of use because the building wasn't completed, couldn't be used. That would not be covered under the Ace policy because it's not property damage caused by an occurrence. It's a failure of the builders to exercise their contractual obligations. Would you like me to address the implied covenant? You haven't asked any questions about that, but I'm fine to take a seat. Did you want to speak to the equitable claims specifically? You mentioned wanting to get back to unjust enrichment, I think. Certainly. Underlying the unjust enrichment, the equitable indemnity claims, is the notion that one party has provided a benefit to another that the other wasn't entitled to. And we would respond that given Ace had already negotiated a settlement, everything covered under its policy, the concept that Admiral went and resettled those claims provided no benefit to Ace. Ace had already paid for them. Well, that's the nub of it. Correct. Ace says otherwise. Admiral says otherwise. That we now know, per the subsequent allocation in the arbitration award, that determination that they paid a piece of it, $211,000, that they think they ought not have paid. So that's the nub of his claiming. For the equitable claims, all of them, he has to show that he's paid more than obligated to pay. So why doesn't that do it for him? Well, it doesn't establish that that loss of use – well, the line item is liquidated delay and loss of use. There's no establishment anywhere that those are sums covered under the Ace policy. And if they were, they were released. So there's no ability to say that Ace obtained a benefit from a resettlement of claims that it had already paid for. And to the notion that the first party to settle often gets a better deal, I think that's the idea. That's the incentive behind the public policy in favor of settlement. We want the insurance companies to rush to settle cases. And if the concern being raised that there will be an absolute rush to get out first, I think that's a good thing, and I think that's consistent with California public policy in favor of settlement. I sense the panel doesn't need to hear about the implied covenant. Well, I had a question about the implied versus contractual duty to identify. How do the two different theories either expand your potential liability or amount of exposure? Well, in California, in order to get into the implied covenant with regard to the duty to indemnify, there has to have been a breach of the contractual duty to indemnify. The insured has to have not received benefits to which it was entitled, and those benefits have to be unreasonably withheld. Here, the insured received a release for everything covered under the ACE policy, and they were defended throughout the case. Those are the benefits to which it was entitled, and it received them. We never get to the implied covenant conversation because no benefits were withheld, let alone unreasonably. It appears that there are no further questions. Counsel, are you prepared to wrap up? I am. I would also just offer there's 50 years of case law in California from the California Supreme Court saying there's no duty to settle uncovered claims, and there's certainly no duty to resettle already settled claims. Admiral didn't suffer any damages because of anything ACE did. Thank you. Thank you, Counsel. Rebuttal. Your Honor, let me just focus on the settlement process. It's true that an insurer has no obligation to settle uncovered claims, but an insurer, when entering into a settlement on behalf of the insured, has a duty to make sure that the insurer's interests aren't placed ahead of the insurer's interests, and in this case, by ACE only partially resolving Gateway's liability, ACE exposed Gateway to additional liability. But did Gateway actually incur any damages? Gateway incurred damages by retention of coverage, Counsel. Well, let me ask you this. Did Gateway have to pay out any money? No. Well, Gateway didn't pay any defense costs or indemnity costs, but it did have to. Right. So how were Admiral's actions at the expense of Gateway if Gateway never suffered any resultant injury? Because if Admiral had heeded the advice of the district court and refused to settle, then the case would have gone to trial, and defense counsel paid Gateway's liability between $6 million and $7 million. The Admiral policy has a $5 million limit. So wouldn't Admiral have faced a bad-faith settlement possibility at that point if it had refused to settle? Right, and that was the perversion of the district court's advice to Admiral that if it believed that certain claims were not covered, it should have paid those claims. And risk a bad-faith claim, which is much worse than the settlement. Well, that's true, and that's why Admiral protected Gateway's interests and resolved Gateway. That's your argument, right? Well, your client at that point was between a rock and a hard place and needed to get the insured out of the line of fire. Right, and that's precisely what Admiral did. It resolved the case and reserved the coverage uses for a later date. Right. So I can't find any California case law that really goes to this point. It is a unique scenario. Yes. And certainly there's a lot of case law that talks about the need to make sure that the insured is covered, and I think Opposing Counsel's got a really good point that one outcome here is that it would encourage insurers to come forward to settle. What is your strongest argument? Of the equitable claims, what's your strongest claim here? Of what? Which claim? Any of the equitable claims. Well, again, it's equitable indemnity because the Fireman's Fund and the Clarendon case are told that a release entered into between an insured and insurer or between a third-party claimant and insurer is not a bar to a co-insurer's equitable indemnity claim. So just so I understand your argument, when you were talking about refusing to pay, you were saying that the court was telling you to refuse to pay. I thought you were saying the court was telling ACE should have refused. No, no. The court was telling you that you should have refused. I think the record, so I want to make sure I've got this right, too. I think the record is that when you claimed you weren't a volunteer, the district court's response was if you thought these claims weren't covered under the admiral policy, you shouldn't have paid them. Precisely. And your response was we paid them because we otherwise would risk bad faith because we had to take care of Gateway. That's correct. Okay. Right. I thought you were saying ACE. And because of that, this court has broad equitable powers to tailor equitable remedies toward a particular situation of a case. But I don't know. Why doesn't that same logic apply to ACE with its settlement? To say that it was trying to keep itself from having a bad faith claim against it by entering into the settlement it entered into, even though perhaps it might have covered some claims that were not firmly covered by its policy. So why doesn't that same argument work in the reverse? Well, because ACE was not facing any bad faith liability at that time. The insurance company is always facing bad faith liability. Well, that's true, but both ACE and Admiral retained the same defense counsel. Defense counsel wasn't even aware that ACE had gone ahead and resolved that part of those claims that were covered by the ACE policy. And the unique thing seems to me to be that settlement agreement allows Hartford to continue to pursue claims that may indeed trigger the ACE policy. It's just that they stipulated that they wouldn't seek to execute if that happened. Well, if you look at the settlement agreement, the covenant not to execute was very limited. It wasn't a blanket covenant like you typically see that would insulate the insured from any exposure. That covenant was narrowly tailored to only insulate gateway from execution of any claims covered by the ACE policy. Exactly. Then that's Judge Rollinson's point. Right. So because of that, gateway was exposed to excess liability if Admiral had renewed its own safety net and adhered to the district court's advice and said, look, we're not going to settle because we think that we're paying for non-covered claims. We'll take it to trial. Well, trial would have a catastrophic outcome for gateway because the defense counsel's assessment was between $6 and $7 million. The Admiral policy has a $5 million limit, which is eroded by defense expenses. Counsel, what amount are you seeking from ACE? Well, at least $210,000. Right. We know that. So is that at least or is that at most? That's at least. Okay. So in addition to that, what proof do you have of damages? Well, we have the records of Hartford's expert who Admiral retained who has quantified the amount of damages that fall within those categories that would constitute property damage. Where is that in the record? Those damages are not in the record. The only thing that's in the record is the $211,000. For purposes of this record, the amount of damages you have established is roughly $200,000. That's correct. Any other questions? No. All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, KOH